## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| ARIA HEALTH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 22-2272 (ABJ) |
| ) | |
| XAVIER BECERRA, Secretary, ) | |
| United States Department of ) | |
| Health and Human Services, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## <u>MEMORANDUM OPINION</u>

This case involves claims brought by three hospitals that are challenging the calculation of payments due to them under the disproportionate share hospital ("DSH") adjustment set forth in the Medicare statute. Am. Compl. [Dkt. # 10] ¶ 1. The manner in which the Secretary of the Department of Health and Human Services ("HHS") has calculated this adjustment has been the subject of litigation before numerous courts for more than a decade. *See* Am. Compl. ¶ 1. The instant case addresses how defendant handled a particular type of claim after plaintiffs' cases were consolidated into *In re Allina II-Type DSH Adjustment Cases*, No. 19-mc-190 (ABJ), and later remanded to the agency. Am. Compl. ¶¶ 1, 48–49. Based on the procedural history that will be set forth in detail below, the Court agrees that plaintiffs failed to exhaust their administrative remedies before filing this action, and that the Court does not have subject matter jurisdiction over this case. Accordingly, it will be dismissed.

1

## BACKGROUND AND PROCEDURAL HISTORY

At the close of each fiscal year, hospitals serving Medicare patients file "cost reports" with Medicare Administrative Contractors ("MACs").  Am. Compl. ¶ 9, citing 42 C.F.R. §§ 413.20, 413.24.  The MACs are contractors retained by the Center for Medicare & Medicaid Services ("CMS"), a component of HHS, to analyze hospitals' cost reports and determine how much reimbursement is due to them from the Medicare program.  Am. Compl. ¶¶ 7, 9–10.  Under the Medicare statute, hospitals that disagree with a MAC's payment calculation for a fiscal year may file an administrative appeal with the Provider Reimbursement Review Board ("the Board" or "PRRB"), and they have the right to a hearing before the Board, if certain conditions are met.  42 U.S.C. § 1395oo(a); *see* 42 C.F.R. §§ 405.1835–405.1877.

One of the factors MACs consider in determining a hospital's Medicare reimbursement is the DSH adjustment, which provides payment for hospital inpatient days of Medicare beneficiaries.  *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. §412.106.  In 2004, defendant utilized a new methodology for calculating the DSH adjustment, which changed how patients enrolled in Medicare Advantage plans under Medicare Part C were treated in the calculation.  *See* Am. Compl. ¶ 1.  Hospitals challenged the new methodology, arguing it violated the statute and was improperly implemented without notice-and-comment rulemaking.  *See* Am. Compl. ¶¶ 25–37.

## I.     The *Allina II* Litigation

Defendant's ongoing application of the methodology resulted in a string of lawsuits, including *Allina Health Servs. v. Price*, 863 F.3d 937 (D.C. Cir. 2017), *aff'd sub nom. Azar v. Allina Health Servs.*, 139 S. Ct. 1804 (2019) ("*Allina II*").  In this line of cases, the D.C. Circuit held in 2017 that notice-and-comment rulemaking had been required before the agency changed its DSH methodology.  863 F.3d 937.  This ruling prompted a deluge of lawsuits filed in this

district by hospitals challenging their DSH payments.  The cases were consolidated before this Court in *In re Allina II-Type DSH Adjustment Cases*,  No. 19-mc-190 (ABJ) ("*In re Allina II*"), and within that matter, the parties and the Court refer to the hospitals' claims under this line of cases as "*Allina II*-type" claims.  Hospitals filed new lawsuits with *Allina II*-type claims as MACs continued to apply the challenged DSH methodology to subsequent fiscal years, and the new cases were consolidated into the *In re Allina II* matter as they were filed.  *See In re Allina II*.

Among the cases filed after the D.C. Circuit ruling were the three lawsuits filed by plaintiffs in this case in 2017 and 2018:  *Adcare Hospital of Worcester, Inc.  v.  Becerra*, 17-cv-1896 (D.D.C. Sept. 14, 2017); *St. Mary's Health Care System, Inc.  v.  Becerra*, 17-cv-2106 (D.D.C. Oct. 11, 2017); and *Grady Memorial Hospital Corp. v. Becerra*, 18-cv-1126 (D.D.C. May 11, 2018).  *See* Am. Compl. ¶ 46.  The three cases challenged the plaintiff hospitals' DSH adjustments for fiscal years 2009–2012, and they were consolidated into *In re Allina II*.  Am. Compl. ¶¶ 5, 48.

On June 3, 2019, the Supreme Court issued *Azar v. Allina Health Services*, which upheld the D.C. Circuit's ruling that notice-and-comment rulemaking had been required when the agency changed its methodology in 2004.  *See* 139 S. Ct. 1804.  In response, defendant issued a notice of proposed rulemaking on August 6, 2020, initiating the rulemaking the Court held was necessary to implement the DSH methodology.  Am. Compl. ¶ 38, citing 85 Fed. Reg. 47,723.  That same month, the agency issued CMS Ruling 1739-R ("Ruling 1739"), which effectively put all of the pending and incoming administrative appeals of hospitals' DSH adjustments on hold while the agency completed the rulemaking process.  Am. Compl. ¶ 40; Ruling 1739 at 1–2 (requiring the Board to "remand any otherwise jurisdictionally proper challenge raising this issue to the appropriate Medicare contractor," which would "then calculate the provider's disproportionate share hospital (DSH) payment adjustment pursuant to the forthcoming final rule").

On November 15, 2019, defendant filed a motion to voluntarily remand the *Allina II*-type claims in the consolidated cases so the agency could complete the rulemaking and take further action on the claims pursuant to the forthcoming final rule. *In re Allina II*, Mot. to Remand [Dkt. # 4]. The Court granted the motion in January 2021. *In re Allina II*, Order [Dkt. # 74]. But not all the claims in the consolidated cases were remanded. Many of the cases filed after defendant issued Ruling 1739 included counts challenging that Ruling, while others involved claims that presented what the Court referred to as "ancillary jurisdictional issues": administrative appeals of DSH adjustments that the Board had dismissed for procedural or jurisdictional reasons. *Id.*, Order [Dkt. # 74] at 9–10; *id.*, Order [Dkt. # 116]. The Court stayed these claims. *See id.*, Order [Dkt. # 116] (consolidating claims into *In re Allina II* and staying them at the parties' request); *id.*, Order [Dkt. # 131] (staying the claims challenging Ruling 1739).

## II.    Remand of Certain Claims Pursuant to *Banner Heart Hospital* Ruling

*Adcare Hospital of Worcester*, *St. Mary's Health Care System*, and *Grady Memorial Hospital*, the three lawsuits filed by plaintiffs, included claims with ancillary jurisdictional issues in addition to *Allina II*-type claims. Count I of the complaints raised *Allina II*-type claims related to the hospitals' fiscal year 2009–2012 DSH adjustments. Count II challenged the Board's dismissal of their administrative appeals of those adjustments based on the agency's "self-disallowance regulation"[1] – a regulation that another court in this district had already ruled was invalid in 2016. Am. Compl. ¶ 45; *see Banner Heart Hosp. v. Burwell*, 201 F. Supp. 3d 131

---

1    The self-disallowance regulation required hospitals to protest disputed rules when filing their initial cost report with a MAC in order to preserve their right to administratively appeal any payment determinations. Am. Compl. ¶ 44, citing 42 C.F.R. § 405.1835(a)(1)(ii) (2008).

(D.D.C. 2016) ("*Banner*") (finding an administrative dismissal under the regulation improper where it would have been "futile" to include the disputed item in a cost report).

The agency decided to apply the *Banner* ruling going forward rather than challenge the decision.  Am. Compl. ¶ 47; CMS Ruling 1727-R.  Thereafter, the parties in the consolidated matter jointly asked the Court to vacate the Board dismissals issued under the regulation that had been declared invalid in *Banner* and remand the hospitals' appeals of those rulings to the agency for further administrative action.  *See In re Allina II*, Joint Status Report [Dkt. # 182].  The Court granted the request, and that set of claims, including the claims in plaintiffs' 2017 and 2018 cases, were remanded to the agency.  *Id.*, Order [Dkt. # 183].

## III.    The Administrator's Order

On June 3, 2022, following the Court's remand, the CMS Administrator ordered the claims remanded to the Board.[2]  Ex. A to Am. Compl., CMS Administrator's Order (June 3, 2022) ("Administrator's Order").  The Administrator's Order instructed the Board to revisit the claims "consistent with . . . the Secretary's acquiescence in *Banner Heart Hospital.*"  Administrator's Order at 3.

> [F]or the remanded cases for which the [Board] determines that – but for the 2008 self-disallowance regulation – it has jurisdiction, the [Board] shall, pursuant to this Order of the Administrator, remand the cases to the appropriate Medicare Administrative Contractor (MAC) to recalculate the DSH payment adjustments . . . in accordance with the forthcoming new rule when it is finalized and adopted through notice and comment rulemaking . . . .

*Id.* at 4 (footnotes omitted).

---

2       Plaintiffs' claims were assigned Board case numbers 13-2059G, 13-2061G, 14-3206GC, 14-3209GC, 14-3869GC, 14-4382G, 14-4383G, 15-0041G, 15-0042G, 15-1749G, 15-1750G, 15-2646G, and 15-2647G.  Am. Compl. ¶ 50.

The order noted that "Ruling 1739 does not apply to these judicially remanded claims and therefore also could not affect the Board's jurisdiction over these cases." *Id.* at 4, n.2.  In other words, if the Board found that without application of the now defunct self-disallowance regulation, it had jurisdiction over an appeal, it would remand that claim to the MAC for recalculation under the DSH final rule.  The claim would receive the same treatment as under Ruling 1739 – going to the MAC to await the final rule – but it would be remanded to the MAC pursuant to the Administrator's Order, not pursuant to Ruling 1739.

On June 30, 2022, pursuant to 42 U.S.C. § 1395oo(f)(1), plaintiffs asked the Board to grant them expedited judicial review ("EJR") of their remanded claims.  Am. Compl. ¶ 51.

On July 27, 2022, the Board denied plaintiffs' request.  Am. Compl. ¶ 52.  It reasoned that plaintiffs' requests to move straight to judicial review were premature because the Board had not yet reopened the remanded claims or completed its jurisdictional review.  *Id.*; Exs. B–D to Am. Compl. at 1.  It further explained that under the governing regulations, the thirty-day time period for ruling on an EJR request does not begin to run until the Board has determined its own jurisdiction.   *See* Exs. B–D to Am. Compl., at 1, citing 42 C.F.R. § 405.1842(b).

Separately, on July 27, 2022, the Board notified plaintiffs that it had reopened their cases. *See* Ex. E to Am. Compl.

## IV.    This Lawsuit

On August 2, 2022, plaintiffs filed this lawsuit.  *See* Compl. [Dkt. # 1].  On October 5, 2022, they filed an amended complaint to remove one of the Board cases.  *See* Am. Compl. ¶ 50. Count I asserts *Allina II*-type claims, repeating their challenges to defendant's application of the DSH methodology to their 2009–2012 fiscal year payments, first raised in their three previous lawsuits.  Am Compl. ¶¶ 57–65.  Count II challenges the CMS Administrator's June 3, 2022 Order

sending claims the Court remanded to the agency to the Board, which plaintiffs contend violates the Administrative Procedure Act and the Medicare statute.  Am. Compl. ¶¶ 67–71, citing 5 U.S.C. § 706(2) and 42 U.S.C. §§ 1395oo(a), (f)(2), and 1395hh(e).

On October 19, 2022, defendant moved to dismiss the case for lack of subject matter jurisdiction.  *See* Def.'s Mot. to Dismiss [Dkt. # 11] ("Def.'s Mot.").  On November 16, 2022, plaintiffs filed an opposition and cross-motion for relief consistent with the Court's orders in the consolidated *Allina II* action [Dkt. # 14] ("Pls.' Opp./Mot.").  Defendant filed his reply and cross-opposition on December 20, 2022, *see* Combined Reply in Support of Def.'s Mot. and Opp. to Pls.' Opp./Mot. [Dkt. # 16] ("Def.'s Reply"), and plaintiffs filed their reply on January 20, 2023. *See* Reply in Support of Pls.' Opp./Mot. [Dkt. # 18] ("Pls.' Reply").

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying principle to a Rule 12(b)(1) motion).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule 12(b)(6) case); *Food & Water Watch, Inc. v. Vilsack* , 808 F.3d 905, 913 (D.C. Cir. 2015) (rule 12(b)(1) case).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan*

*v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ANALYSIS

Defendant has moved to dismiss the complaint for lack of subject matter jurisdiction. Def.'s Mot. at 1.  He argues that plaintiffs failed to exhaust their administrative remedies by filing for expedited judicial review of the DSH calculation remanded to the Board before the Board had even determined whether it had jurisdiction over their remanded administrative appeals.  *Id.* at 5–9.  In response, plaintiffs contend that the Court has jurisdiction under the statute because section 1395oo(f)(1) allows a hospital to file suit "if the Board determines that EJR is appropriate or fails

to make a determination as to its authority within 30 days after receipt of a request for such determination."  Am. Compl. ¶¶ 3, 13, citing 42 U.S.C. § 1395oo(f)(1) and *Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 354 (D.C. Cir. 2017); Pls.' Opp./Mot. at 7–8.  But plaintiffs are omitting a key step in the process.

Defendant also argues the matter is moot because the agency already has provided the very relief plaintiffs are requesting: a remand to the MAC to recalculate their DSH adjustment under the new rule.  Def.'s Mot. at 9–10.

"Federal subject matter jurisdiction over claims arising under the Medicare Act is permitted only upon the completion of the administrative process outlined in that statute and its implementing regulations."  *Cape Cod Hosp. v. Leavitt*, 565 F. Supp. 2d 137, 139 (D.D.C. 2008) (internal quotation marks omitted), quoting *Three Lower Ctys. Cmty. Health Servs., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 517 F.Supp.2d 431, 435 (D.D.C. 2007); *see also* 42 U.S.C. §§ 405(g)–(h), 1395ii.  Judicial review of a claim under the Medicare Act is available "only after the claim has been presented to the Secretary and administrative remedies have been exhausted." *Am. Chiropractic Ass'n, Inc. v. Leavitt,* 431 F.3d 812, 816 (D.C.Cir.2005), citing 42 U.S.C. §§ 405(g)–(h), 1395w–22(g)(5); *Shalala v. Ill. Council on Long Term Care, Inc.,* 529 U.S. 1, 8–9, 13 (2000) (holding the Medicare statute "demands the 'channeling' of virtually all legal attacks through the agency").

The statute sets forth the administrative remedies available to a provider that wishes to appeal a reimbursement determination.  42 U.S.C. § 1395oo.  A provider that "has filed a required cost report" and is dissatisfied with a MAC's reimbursement determination "may obtain a hearing with respect to such cost report by [the Board]."  42 U.S.C. § 1395oo(a).  The statute further requires that in order for a provider to obtain a hearing under subsection (a), the amount in

controversy must be $10,000 or more, and the provider must file a request for a hearing within 180 days of notice of the MAC's final determination. *Id.* § 1395oo(a)(2)–(3).  After completing the administrative appeal process before the Board, a provider may obtain judicial review.  *Id.* § 1395oo(f).  A provider may ask to bypass the Board process and obtain "expedited judicial review" or "EJR," though, when the matter involves a question of law or regulations that the Board determines it does not have the authority to decide.

Subsection (f)(1) provides:

> *If* a provider of services may obtain a hearing under subsection (a) *and* has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy . . . .

42 U.S.C. § 1395oo(f)(1) (emphasis added).  In other words, the first question is whether a provider may obtain a hearing under subsection (a).

When a provider submits an EJR request, the Board "shall render such determination" – that is, the determination of whether it has the authority to decide the legal or regulatory question at issue – "in writing within thirty days after the Board receives the request and such accompanying documents and materials," and if it "fails to render such determination within such period, the provider may bring a civil action."  *Id.* § 1395oo(f)(1).

The regulation that implements the statutory right to seek expedited judicial review, 42 C.F.R. § 405.1842, makes it clear that there is a preliminary ruling to be made under subsection (a) of the statute before the Board can go on to consider a provider's request to bypass the rest of the process. *See id.* § 405.1842.  It states in a provision entitled "Prerequisite of Board jurisdiction" that "[t]he Board must find that the Board has jurisdiction over the specific matter at issue before the Board may determine its authority to decide the legal question."  *Id.* § 405.1842(b)(1).  And it goes on to explain, "a provider may request a determination of the Board's authority to decide a

legal question, but the 30-day period for the Board to make a determination under section [1395oo(f)(l)] *does not begin to run until the Board finds jurisdiction to conduct a hearing* on the specific matter at issue in the EJR request." *Id.* § 405.1842(b)(2) (emphasis added).

Subsection (d) of the regulation sets out what the provider requests must include, and subsection (e) reiterates:

> *If* the Board makes a finding that it has jurisdiction to conduct a hearing on a specific matter at issue in accordance with § 405.1840(a) of this part, *then (and only then)* it must consider whether it lacks the authority to decide a legal question relevant to the matter at issue.  The Board is required to make a determination of its authority to decide the legal question raised in a review request under paragraph (d)(1) of this section by issuing an EJR decision no later than 30 days after receiving a complete provider request as defined in paragraph (e)(2) of this section.

42 C.F.R. § 405.1842(e)(1).  Finally, subsection (f) of the regulation specifies the criteria for granting EJR, and it states that the Board's decision must grant EJR for a legal question relevant to a specific matter in issue if a number of conditions are satisfied, including the initial requirement that "[t]he Board has jurisdiction to conduct a hearing on the specific matter at issue." *Id.* § 405.1842(f)(1)(i).

Plaintiffs argue that they were authorized to file suit under section 1395oo(f)(1) following the Board's failure to rule on their requests for EJR within the statutorily required thirty days.  Pls.' Opp./Mot. at 2.  They contend that the two-step process set out in the regulation imposes an additional requirement for granting EJR that is not in the statute:  that the Board has "jurisdiction to conduct a hearing on the specific matter at issue."  Am. Compl. ¶ 14, quoting 42 C.F.R. § 405.1842(f)(1)(i); *see also* Pls.' Opp./Mot. at 3; Pls.' Reply at 3.

But subsection (f) and the similar provisions found in subsections (b) and (d) of the regulation are consistent with the statutory prerequisite that the provider may file a request "*if a*

provider of services may obtain a hearing under subsection (a)."   42 U.S.C. § 1395oo(f)(1) (emphasis added), referring to 42 U.S.C. § 1395oo(a).   As the D.C. Circuit has explained in an opinion that is binding on this Court, "the PRRB has authority to grant expedited review *only after* it first determines that the provider is *entitled to a hearing under § 1395oo(a)*."  *Tucson Med. Ctr. v. Sullivan,* 947 F.2d 971, 980 (D.C. Cir. 1991) (emphasis added) (examining whether the amount in controversy requirement had been satisfied), citing 42 C.F.R. § 405.1842(b)(2) (emphasis added).   Thus, subsection (f) of the regulation is not "irrelevant," as plaintiffs assert, Pls.' Opp./Mot. at 8; it implements section 1395oo(f) of the statute.[3]

Plaintiffs rely on *Clarian Health West, LLC v. Hargan*, 878 F.3d 346 (D.C. Cir. 2017), and *Allina Health Services v. Price*, 863 F.3d 937 (D.C. Cir. 2017), *aff'd sub nom. Azar v. Allina Health Services*, 139 S. Ct. 1804 (2019), the D.C. Circuit's 2017 *Allina II* decision, to support their argument.   But neither case involves the regulation or whether the statute's thirty-day deadline applies before the Board has determined its jurisdiction.  *Clarian Health* involved the scope of an EJR decision by the Board.   The defendant asked the Court to read the decision narrowly, to grant expedited judicial review of the validity of a regulation, but not the agency's instructions to MACs regarding the regulation.  *Clarian Health W., LLC*, 878 F.3d  at 354.   But there was no argument that the hospital failed to present its challenge of the instructions in its EJR request, and there was no question the EJR decision did not address it.  *Id.*  So the D.C. Circuit found that "[e]ither the Board granted expedited review over the question presented, or it failed to decide Clarian's request

---

3       In light of this, the Court does not find a challenge to 42 C.F.R. § 405.1842(f) material to the issue of the Court's jurisdiction and declines plaintiffs' invitation to read such a challenge into the complaint, where there is no such count, or to grant leave to amend the complaint to add such a claim.  *See* Pls.' Opp./Mot. at 8–9, n.4.

for expedited judicial review of the question within thirty days.  In either event, Clarian had a right to seek review in the District Court." *Id.*

The issue addressed in the 2017 *Allina II* decision concerned whether a Board's determination to grant EJR was subject to judicial review.  *Allina Health Servs.*, 863 F.3d at 940–42.  In that case, the defendant argued that the Board incorrectly granted EJR when it should have ruled on the merits of the hospitals' challenge.  *Id.* at 940.  But the D.C. Circuit held that an EJR decision by the Board is not subject to judicial review:  "[t]he statute conditions expedited judicial review in the district court on the existence of that no-authority determination, *not* on whether that determination is correct." *Id.* at 941 (emphasis in original).  In making this ruling, the Court noted that "[a] provider may bring suit in the district court even when the Board fails to make a timely [EJR] determination." *Id.* (citation omitted).

Both of these cases are inapposite since neither addresses the particular timing question presented here. And plaintiffs' focus on 42 C.F.R. § 405.1842(f) ignores the portion of the regulation that squarely addresses the question before the Court, 42 C.F.R. § 405.1842(b)(2), a provision that has been regularly enforced by courts in this and other districts.  *See*, *e.g.*, *Saint Francis Med. Ctr. v. Becerra*, No. 1:22-CV-1960-RCL, 2023 WL 6294168, at *4 (D.D.C. Sept. 27, 2023) ("The thirty day period within which the Board must act on an EJR request does not begin to run until the Board accepts jurisdiction, and, this scheme is consistent with the plain text of the Medicare Act."); *Cape Cod Hosp.,* 565 F. Supp. 2d at 140–41 (rejecting plaintiffs' arguments that the Court could assume jurisdiction over the case because the Board failed to act on their EJR requests within 30 days, and ruling that the regulations do not conflict with the Medicare Act); *San Francisco Gen. Hosp. v. Shalala*, No. C 98-00916 SI, 1999 WL 717830, at *4–5 (N.D. Cal. Sept. 8, 1999) (concluding plaintiffs failed to exhaust administrative remedies

because they filed the action before the Board issued its jurisdictional determination); *Total Care, Inc. v. Sullivan*, 754 F. Supp. 1097, 1103 (W.D. N.C. 1991) (holding that under the regulation, the thirty-day period does not begin to run until after the Board determines it has jurisdiction to entertain the matter, and that the regulation is consistent with section 1395oo(f)(1)), *aff'd*, 952 F.2d 397 (4th Cir. 1991); *Alexandria Hosp. v. Bowen*, 631 F. Supp. 1237, 1241–45 (W.D. Va. 1986) (holding that the regulations regarding the processing of EJR requests reasonably implement section 1395oo(f)(1); "a jurisdictional determination of the hospitals' appeal was necessary before the PRRB could be required to evaluate their EJR request.").

Here, plaintiffs filed their request for EJR before the Board had even reopened their remanded claims, and they filed this action before the Board determined whether it had jurisdiction over the matters at issue.  Am. Compl. ¶¶ 51–52.  Thus, it was the timing of plaintiff's request, not the timing of the Board's determination, that deprives this Court of jurisdiction over this case. 42 U.S.C. § 1395oo(f).

In short, this case does not involve a failure by the Board to render an EJR determination within thirty days of plaintiffs' request because the thirty-day clock had not yet begun to run.  *See* 42 C.F.R. § 405.1842(b)(1), (b)(2), (e)(1), & (f).  Accordingly, plaintiffs failed to exhaust their

administrative remedies before they asked the Court to intervene, and the Court has no jurisdiction over this case.[4]

## CONCLUSION

For the reasons stated above, the Court will **GRANT** [Dkt. # 11] defendant's motion to dismiss for lack of subject matter jurisdiction and **DENY** [Dkt. # 14] plaintiffs' cross motion for relief consistent with the Court's prior orders in the consolidated *Allina II* action.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 29, 2024

---

[4]     Given this ruling, the Court will not reach defendant's argument that the case is moot because the Board has granted the relief plaintiffs seek: remand of their *Allina II*-type claims to the MAC to calculate their DSH adjustment under the new final rule. Def.'s Mot. at 9–10. Because this remand to the MAC was pursuant to the Administrator's Order, plaintiffs assert this may "effectively reset the date from which interest would accrue, thereby depriving hospitals of years of interest to which they are otherwise entitled under the statute." Am. Compl. ¶ 69, *see* Administrator's Order at 4–5.  The Court understands plaintiffs' desire to challenge the Administrator's Order, as they sought to do in this action, but that challenge is for another day and another action.